IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JASON U. HARMON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:11-cv-00251-APR |
| ) | |
| UNITED STATES STEEL ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

### OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 38] filed by the Defendant, United States Steel Corporation, on May 17, 2013. Because the plaintiff, Jason U. Harmon, did not respond to the defendant's motion for summary judgment and the time to do so has since passed, the Motion for Summary Judgment is **GRANTED.**

Background

The defendant, United States Steel Corporation, operates a steel finishing facility in Portage, Indiana, where the plaintiff, Jason U. Harmon, was employed at the time of the events which form the basis of this lawsuit.  U.S. Steel prohibits discrimination based on race and provides policies to advise employees of procedures they must follow to report discriminatory behavior. These procedures were provided to Harmon when he became employed by U.S. Steel in 2003.

Harmon began working for U.S. Steel in its steel finishing facility on May 20, 2003. Prior to that date, Harmon worked for National Steel at the same facility from 1995 until U.S. Steel purchased the plant in 2003. Harmon is a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union,

1

AFL-CIO/CLC (Union). Harmon was covered under a Basic Labor Agreement between U.S. Steel and the Union, which governs the terms and conditions for production and maintenance employees at U.S. Steel facilities. Harmon worked as a Labor Grade 2 Utility Technician on the Galvanizing Line, where he performed functions of Feeder and Inspector. As a Feeder, Harmon's duties included feeding coils through the Line, welding coils, and swinging a sledgehammer to check the dexterity of welds.

Harmon was suspended from his duties three times between October 16, 2007 and September 26, 2008. On November 17, 2009, Harmon failed to complete a MAPPS form fully that was to be completed when he found a defect on a coil. Harmon subsequently received a five-day suspension for "Failing to Provide Quality Information on MAPPS." On November 19, 2009, Harmon's manager, Michael Patton observed Harmon sleeping during his shift. As a result, Harmon received another five-day suspension for "Failure to Perform Assigned Work Duties."  Pursuant to the BLA, a hearing was held for these two disciplinary matters on December 2, 2009, during which Harmon was represented by the Union and provided explanations for his actions in each matter.  In accordance with the BLA and the progressive discipline principles utilized by U.S. Steel, Harmon's suspensions were converted to a discharge. A Second Step Meeting was held on December 16, 2009, wherein Harmon was represented by the Union and responded to the discharge.

Following this meeting, U.S. Steel, the Union, and Harmon entered into a Last Chance Agreement (LCA) that provided for Harmon's continued employment with U.S. Steel. The LCA contained provisions pertaining to, among other things, a specific procedure Harmon was to utilize in the event of an absence or late arrival to work. The LCA advised Harmon that the failure to comply with these provisions would result in a suspension subject to discharge.

Finally, the LCA contained an acknowledgement indicating that each party understood the agreement and its potential consequences and that each party was signing the agreement voluntarily. Prior to Harmon signing the LCA, a supervisor explained all the portions of the LCA to Harmon. On February 16, 2010, Harmon and his Union representative signed the LCA.

Harmon failed to report to work on August 15, 2010 and did not follow the procedure contained in the LCA. As a result, Harmon received three five-day suspensions for Failure to Report Off, Absent without Just Cause, and Violation of Last Chance Agreement. On August 18, 2010, Harmon was represented by the Union at a hearing wherein he offered an explanation for not following the procedures of the LCA. During this hearing, Harmon also stated that he was suffering from carpal tunnel syndrome. On August 20, 2010, U.S. Steel converted Harmon's suspensions into a discharge in accordance with the BLA and the LCA. On August 23, 2010, the Union filed grievances challenging the discharge. A Second Step hearing was held on August 26, 2010, wherein Harmon was represented by the union and offered a further explanation for not reporting off. U.S. Steel denied the grievance, which was appealed to arbitration on October 19, 2010.

On October 29, 2010, Harmon filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging that he was discharged from employment at U.S. Steel because he is African American. On February 25, 2011, the EEOC found that Harmon failed to establish a racial discrimination claim.

An arbitration hearing was held on April 6, 2011. In an award dated August 18, 2011, the arbitrator sustained the grievances in part and denied in part. The arbitrator found that there was not proper cause for discharge but there was proper cause for a substantial discipline of Harmon. As such, the arbitrator ordered Harmon reinstated subject to the terms of the LCA and without

back pay. At no time during the grievance and arbitration proceedings did Harmon allege that any of the actions taken against him were for racially discriminatory reasons.

Harmon attempted to return to work on August 24, 2011, but U.S. Steel determined that he could not perform the functions of either of his previous two jobs with the restrictions imposed by his doctor. On May 20, 2011, Harmon had testified in a separate worker's compensation deposition that he was unable to work due to bilateral carpal tunnel until he had surgery on his hand. On August 24, 2011, Harmon filed a claim for Sickness and Accident Benefits, because he was unable to perform his job duties. The claim was denied, and the Union filed a grievance on Harmon's behalf on September 19, 2011.  Harmon filed additional S&A claims on December 6, 2011 and January 10, 2012. He returned to work on February 15, 2012. On January 16, 2013, U.S. Steel agreed to pay Harmon $15,000 in benefits for his S&A claims for the period of August 24, 2011 through February 17, 2012.

Harmon filed this action in the Porter County Superior Court on June 14, 2011, under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The case was removed to U.S. District Court for the Northern District of Indiana on July 14, 2011. Harmon's claims of retaliation, disability discrimination, and intentional infliction of emotional distress were dismissed by this Court on January 17, 2012. U.S. Steel filed a Motion for Summary Judgment [DE 38] on the remaining Title VII violation claim on May 17, 2013. Harmon has failed to respond.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 322-23, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens,* 569 F.3d at 786.  A fact is material if it is outcome determinative under applicable law.  There must be evidence on which the jury reasonably could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens,* 569 F.3d at 786; *Wheeler v. Lawson,* 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.  *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact.  *Wheeler,* 539 F.3d at 634 (*citing Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510).

> In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.
> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511

*See also* **Reeves v. Sanderson Plumbing Prods., Inc.,** 530 U.S. 133, 149-51, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); **Celotex Corp.,** 477 U.S. at 322-23, 106 S.Ct. at 2553; **Stephens,** 569 F.3d at 786; **Argyropoulos v. City of Alton,** 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); **Springer v. Durflinger,** 518 F.3d 479, 483 (7th Cir. 2008) (stating that a genuine issue exists and summary judgment is appropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Title VII enables a plaintiff to prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in **McDonnell Douglas Corporation v. Green,** 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 30 L.Ed.2d 668 (1973), and refined in **Texas Department of Community Affairs v. Burdine,** 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See* **Moser v. Indiana Department of Corrections,** 406 F.3d 895, 900-01 (7th Cir. 2005). The direct method requires the plaintiff to show through either direct or circumstantial evidence that the employer's adverse employment action was impermissibly motivated. **Wilkins v. Riveredge Hospital,** 130 Fed. Appx. 823, 828 (7th Cir. 2005).

The most general statement of the **McDonnell Douglas** method of proof is that the plaintiff has the initial burden of showing that: 1) he belongs to a protected group; 2) he was performing to the employer's legitimate expectations; 3) he suffered an adverse employment decision; and 4) the employer treated similarly situated employees who are not in the protected group more favorably.  *See* **Moser,** 406 F.3d at 900; **O'Neal v. City of Chicago,** 392 F.3d 909, 911 (7th Cir. 2004); **Williams v. Waste Management of Illinois, Inc.,** 361 F.3d 1021, 1029 (7th Cir. 2004). This framework is flexible and may be adapted to fit each case.  **Burdine,** 450 U.S. at

253 n.6, 101 S.Ct. at 1094 n.6; ***Wohl v. Spectrum Manufacturing, Inc.,*** 94 F.3d 353, 359 (7th Cir. 1996).

Once the plaintiff has met this initial burden, "a presumption of discrimination arises, and the employer must articulate a legitimate, nondiscriminatory reason for its employment action." ***Moser,*** 406 F.3d at 895; ***O'Neal,*** 392 F.3d at 911.  The defendant's burden is not one of persuasion, but rather of production and "can involve no credibility assessment." ***St. Mary's Honor Center v. Hicks,*** 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993); ***Reeves,*** 530 U.S. at 142, 120 S.Ct. at 2106.  The burden then shifts back onto the plaintiff to show that the reason given by the defendant is just a pretext for discrimination.  ***Moser,*** 406 F.3d at 900-01.  The plaintiff cannot establish pretext merely by showing that the "reason was doubtful or mistaken." ***Crim v. Board of Education of Cairo School District No. 1,*** 147 F.3d 535, 541 (7th Cir. 1998). Rather, the plaintiff must show that the employer is lying or that the employer's reasoning has no basis in fact.  ***Guerrero v. Ashcroft,*** 253 F.3d 309, 313 (7th Cir. 2001); ***Ransom v. CSC Consulting, Inc.,*** 217 F.3d 467, 471 (7th Cir. 2000); ***Crim,*** 147 F.3d at 541.

Despite the shifting burden of production, the ultimate burden of persuasion remains at all times with the plaintiff.  ***Moser,*** 406 F.3d at 901; ***Haywood v. Lucent Technologies, Inc.,*** 232 F.3d 524, 531 (7th Cir. 2003); ***Stockett v. Muncie Indiana Transit System,*** 221 F.3d 997, 1001 (7th Cir. 2000).  A plaintiff alleging discrimination, however, has a lesser burden when proceeding on a summary judgment motion.  In ***Anderson v. Baxter Healthcare Corp.,*** 13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both ***McDonnell Douglas*** and [***St. Mary's Honor Center v. Hicks,*** 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial.  However, for summary judgment purposes, the nonmoving party, in this case the plaintiff,

7

> has a lesser burden.  He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.
>
> 13 F.3d at 1124 (*quoting* **Shager v. Upjohn,** 913 F.2d 398, 401 (7th Cir. 1994))

*See also* **Plair v. E.J. Brach & Sons, Incorporated,** 105 F.3d 343, 349 (7th Cir. 1997); **Cliff v. Board of School Commissioners of the City of Indianapolis, Indiana,** 42 F.3d 403, 412 (7th Cir. 1994).  If the plaintiff is unable to meet his burden, his claims must fail.

Based on the record, Harmon cannot establish a prima facie showing of racial discrimination. Not only has he failed to show that he was performing at his employer's reasonable expectations, a claim that is contrary to the record, he also has failed to show that U.S. Steel treated similarly situated white employees more favorably.

The evidence shows that Harmon had been suspended five times for such offenses as "Failing to Provide Quality Information on MAPPS" and sleeping during his shift. He already had been placed on a Last Chance Agreement when he did not report for a shift and failed to report off as required.  Harmon has not come forth with any evidence to contradict this and create a genuine issue of material fact that he was meeting his employer's reasonable expectations. *See* **Coco v. Elmwood Care, Inc.,** 128 F.3d 1177, 1180 (7th Cir. 1997) (finding that the plaintiff failed to demonstrate that he met the employer's legitimate employment expectations). Rather, he has admitted that he submitted an incomplete report to his supervisor and that he also was found sleeping on his shift. However, Harmon alleged that white employees involved in similar behavior were not disciplined.

To show that employees outside of his protected class were treated more favorably, Harmon named Mark Purevich, who he claimed arrived to work late frequently and without disciplinary action.  However, Harmon failed to demonstrate that Purevich was similarly situated

because Purevich was not on a LCA.  Harmon also named Earl Miller and Kathleen Long, who he claimed slept during their shifts but were not disciplined. However, Harmon failed to provide evidence of a specific occasion in which one of them was found sleeping or any other relevant details that would be required to show those employees were similarly situated to Harmon.  In lieu of specific details, in both instances, Harmon simply offered rumors that have been spread throughout the department.  These rumors are not sufficient to meet Harmon's burden of proof.  At this stage, Harmon must submit evidence to show that his allegations have merit, and he has failed to do so.

Furthermore, in his attempt to demonstrate discriminatory treatment compared to white co-workers, Harmon has failed to identify an employee who had a comparable disciplinary record.  Harmon has not pointed to one incident of favoritism within the plant of white employees over African Americans and therefore has failed to establish a nexus between his race and the adverse employment actions he alleges to have suffered.  To the contrary, U.S. Steel produced evidence that 15 white employees of the same plant had been placed on LCAs from December 2006 through May 2013.  Five of those white employees were discharged for violating the terms of their LCAs.  At this stage, Harmon cannot rest solely on his pleadings and must come forth with some evidence to show that he can support a prima facie case.  *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.  Absent any evidence beyond his vague allegations that white employees were not disciplined for similar offenses, Harmon has failed to meet this burden and show that a genuine issue of material fact precludes summary judgment.

Recently, the Seventh Circuit has considered a change in the analysis of cases alleging discrimination, suggesting that "the time has come to jettison the 'ossified direct/indirect paradigm' in favor of a simple analysis of whether a reasonable jury could infer prohibited

discrimination." *Perez v. Thorntons, Inc*., 2013 WL 5420979 (7th Cir. 2013).  In other words, in order to prevail at the summary judgment stage, the question is "whether 'a rational jury could conclude that the employer took that adverse action on account of [the employee's] protected class [or activity], not for any non-invidious reason." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 313 (7th Cir. 2012) (quoting *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring)).  Here, either analysis yields the same result.  Harmon's extensive disciplinary record provided U.S. Steel with sufficient means to discharge him more than once.  He has produced no evidence upon which a jury could infer that U.S. Steel's actions were discriminatory.  Therefore U.S. Steel's motion for summary judgment is **GRANTED.**

Based on the foregoing reasons, Harmon was unsuccessful in establishing a prima facie case under Title VII for racial discrimination. Because the plaintiff did not respond to U.S. Steel's Motion for Summary Judgment and the time to do so has since passed, the Motion for Summary Judgment [DE 38] filed by U.S. Steel on May 17, 2013 is **GRANTED.**

ENTERED this 9th day of December, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge